## THE PADDOCK HODGE CO. v. GRAIN DEALERS' NATIONAL ASSOCIATION ET AL.

*Arbitration—Rules and by-laws of unincorporated association valid—Member refusing to comply subject to penalty—Courts will not restrain enforcement of penalty, when.*

1. An unincorporated association of grain dealers, organized for the purpose of raising the standard of the grain business and facilitating the exchange of business among its members, may adopt rules and by-laws providing for the arbitration of all matters of difference pertaining to the grain business that may arise between its members.
2. A member of such organization, who refuses to comply with the rules and by-laws relating to arbitration, is subject to the penalty for such refusal provided by the rules and by-laws.
3. Where a controversy between members of such an association has been voluntarily submitted by them to the arbitration committee of the association, and the member against whom the award is returned refuses to comply with the award, a court of equity will not restrain the association from enforcing the penalty of expulsion, as provided by the rules and by-laws, in the absence of any showing that the arbitration committee failed to comply with the rules and regulations of the association.

(Decided July 13, 1921.)

APPEAL: Court of Appeals for Lucas county.

*Mr. Eugene Rheinfrank,* for plaintiff.
*Messrs. Marshall & Fraser,* for defendants.

CHITTENDEN, J. This action is brought to enjoin the defendant from expelling the plaintiff from membership in that association. The plaintiff is a corporation engaged in dealing in grain

in the city of Toledo. It has been so engaged for many years and conducts an extensive business. The defendant is an unincorporated association of grain dealers, its members numbering something over five thousand. The purpose of the organization is said to be to raise the standard of the grain business and to facilitate the exchange of business among its members. The association is governed by rules and by-laws, among which are certain arbitration rules that have been in effect for some years. The purpose of these arbitration rules is to reduce friction, avoid litigation, prevent misunderstandings and adjust unsatisfactory conditions, and applies to all matters of difference pertaining to the grain business that may arise between its members, or between its members and others who may submit their differences to the arbitration committee. These rules contain a complete system of arbitration and provide for a board of appeals to review the decisions of the national committees. Section 17 of Article VI of these rules reads as follows:

"Neglect or refusal to submit the subject matter of a controversy to arbitration, or failure to comply with an award of the arbitration committee, shall be deemed uncommercial conduct and the penalty shall be expulsion."

Some time prior to June, 1919, a business difference arose between the plaintiff and the Park & Pollard Company of Boston, Massachusetts. The Park & Pollard Company asked to have the difference submitted to arbitration under the rules of the association, and in June of that year signed an arbitration agreement, as provided by Section 1, Article VI, and forwarded the same for signa-

ture of the plaintiff. After some delay this contract for arbitration was signed by the plaintiff company. The contract was duly acknowledged by the president of the Park & Pollard Company on the 2d day of June, 1919, before a notary public in Suffolk county, Massachusetts, and on the 26th day of July the contract was acknowledged before a notary public in Lucas county by the president of plaintiff company. Each of these acknowledgments contains the statement that the execution of the same is the voluntary act of the party to the contract.

Thereupon the questions involved between the parties were submitted to the arbitration committee. Evidence was submitted by the Park & Pollard Company, and was forwarded to the committee, and after a delay of some eleven months the plaintiff submitted its evidence to the committee. The members of the committee separately, and at different conferences of the committee, considered the evidence and the case, and finally rendered an award in favor of the Park & Pollard Company against the plaintiff for a sum amounting to nearly $4,000. Thereupon, as the evidence in the case shows, the plaintiff proposed to appeal from the decision of the committee to the board of appeals, but when it was advised by the secretary of the National Association that one of the requirements in perfecting an appeal was the deposit with the secretary of a certified check, covering the amount of the award, the plaintiff failed to go further with the appeal and declined to pay the award of the committee. Thereupon, in accordance with the rules of the association, the plaintiff company was notified that unless the ap-

peal was perfected, or the award paid within the time limited by the rules, the plaintiff would stand expelled from membership in the association. In this connection it may be observed that the association publishes a magazine in which all affairs relating to the association and the grain trade are published, and notice of the expulsion of a member is published as an item of news to the trade. This action is to restrain the defendant from carrying into effect the proposed expulsion of the plaintiff from membership.

The defendant being an unincorporated association not for profit, its affairs and the rights of its members do not depend upon provisions of positive law, but rest upon contract between and among the members. This has been held by courts in many reported decisions. The courts have uniformly held that equity will not interfere to control the management of such an association except where some civil or property right of a member is threatened. By taking membership in such an organization, the member agrees to conform to the rules and by-laws of the organization, and such organization may pass all necessary rules and regulations to carry into effect the purposes for which it is organized, providing they do not conflict with the laws of the land. It is contended in this case that the provisions for arbitration do conflict with the general laws of the land, and that they are against public policy. Much reliance is placed by the plaintiff on the case of *State, ex rel.,* v. *Union Merchants' Exchange,* 2 Mo. App., 96. The defendant in that case was an *incorporated* institution, and owned valuable business property, in which all members had a vested interest, but it

may be conceded that the case in general sustains the claims made for it by counsel for plaintiff. In the course of the opinion, however, the court fully sets forth the favor with which arbitration agreements in general are viewed. The court says, at page 99:

"The law is not opposed to arbitration. On the contrary, it is said to be the policy of the law to encourage these domestic tribunals, although they may, if they choose, disregard the rules of law in their decisions. Indeed, it is probably the very fact that they are not bound by legal rules, nor by the principles of that equity which follows the law, more than anything else, that has led the courts to say that arbitration is looked upon with favor."

It is a matter of common knowledge that arbitration has been more and more resorted to in the settlement of business controversies in later years, and it is conceded that no objection obtains to settling controversies by arbitration, providing controversies are submitted voluntarily to such a tribunal. The contention here made is that it is not a voluntary submission of the controversy.

The Supreme Court of the state of Missouri has made a more recent announcement upon the question determined by the Court of Appeals in the case above cited. The case of *Moffatt* v. *Board of Trade of Kansas City,* 250 Mo., 168, was a case in which the plaintiff sought to restrain the Board of Trade from proceeding to expel the plaintiff from membership on that board. In the course of the opinion, at page 182, the court says:

"We agree with the learned Court of Appeals that in case of a difference or disagreement 'of

a financial, mercantile or commercial character' between or among members of the Board of Trade the board of directors might, in a proper case, determine whether such difference or disagreement was under the rules a proper subject for arbitration and, *if so*, and the complainant demanded arbitration, then a refusal of the other party to arbitrate would subject him to fine, suspension or expulsion.''

In that case, however, the Supreme Court found from the evidence that the arbitration had not been demanded and that the plaintiffs had not refused to submit their differences to arbitration, and reversed the judgment of the lower courts.

The subject has been discussed in numerous cases by the Supreme Court of Illinois. We call attention to the case of *Pacaud* v. *Waite*, 218 Ill., 138, 2 L. R. A. (N. S.), 672, in which the power of the Board of Trade to pass a by-law providing for compulsory arbitration of certain questions was upheld. In that case the Board of Trade was a corporation, and was empowered by its charter to pass such by-laws for the management of its business and its modes of transaction as it might deem proper, and it was in pursuance of that provision of the charter that the by-law in question was passed. The defendant, in the case at bar, however, being unincorporated, had the right to pass such by-laws as it might think proper for the regulation of its membership.

Courts will, however, interfere to see that arbitration committees comply with the rules and regulations of the organization. The case under review, however, in no way involves the proceedings of the committee, nor the merits of the contro-

versy between the plaintiff and the Park & Pollard Company. Indeed the record affords no information whatever concerning the character of that controversy. The only question presented here is whether the defendant may determine the character of its membership by exercising disciplinary power upon failure of a member to comply with the rules of the organization. We think it has such power. *Board of Trade* v. *Nelson,* 162 Ill., 431, 53 A. S. R., 312. One of the evident purposes of the organization is to prevent litigation and to afford a prompt, inexpensive and equitable adjustment of business differences among the members, and it may well say:.

"We do not care to have as a member of the organization any person or corporation that does not entertain the same views with reference to the adjustment of business differences."

It is not necessary for us to decide whether an award by its committee is enforceable in court. A member of the organization may decline to submit his controversies to the arbitration committee, and insist upon litigating the same in the civil courts, but, if so, the organization may proceed to terminate his membership in the organization.

The plaintiff says that its submission of its differences with the Park & Pollard Company to the committee was the result of coercion. This coercion, it appears, consisted only in the fact that of the very extensive business conducted by the plaintiff some eighty or eighty-five per cent. of it was with members of the association, and that its failure to comply with the rules would result in expulsion, which fact would be published to the members of the association.

No doubt the plaintiff debated the wisdom of proceeding under the rules of the organization or of insisting upon litigation in the courts. After having the matter under consideration for some time it evidently determined to abide by the rules of the organization, and the contract for arbitration was signed. Not only was it signed, but the president of the company acknowledged his execution of the same to be his voluntary act. Whatever the plaintiff's right might otherwise have been, it is clear that the signing of the contract for arbitration, and the submission of the controversy to the arbitration committee, would bind it, under the rules of the organization, either to abide the terms of the award or to prosecute an appeal as provided by the rules.

We find no grounds for the interference of a court of equity, and the petition of the plaintiff will be dismissed.

*Petition dismissed.*

RICHARDS and KINKADE, JJ., concur.