## HARRIS v. MISSOURI PAC. R. CO. et al.
### No. 4385.

District Court, E. D. Illinois.
July 8, 1931.

Beasley & Zulley, of East St. Louis, Ill., for plaintiff.

Whitnel & Browning, of East St. Louis, Ill., for defendant Missouri Pac. R. Co.

P. K. Johnson, of Belleville, Ill., and C. E. Weisell, of Cleveland, Ohio, for all other defendants.

WHAM, District Judge.

By his bill the plaintiff seeks relief from a ruling of the general committee of adjustment of the Grand International Brotherhood of Locomotive Engineers, a labor union of which the plaintiff is a member, which ruling has been permitted to go into effect by the defendant Missouri Pacific Railroad, by which company the plaintiff is employed as a locomotive engineer, and which ruling affects detrimentally the plaintiff's rights of seniority. The case is now before the court upon the motions of the defendants to dismiss the bill. The principal ground of the motions is that the bill fails to state facts entitling the plaintiff to equitable relief.

It appears from the plaintiff's bill and the exhibits thereto attached and made a part thereof that the ruling which is complained of was made in a controversy between two local divisions of the Brotherhood of Locomotive Engineers on the Missouri Pacific Railroad, namely Division 674 located at Dupo, Ill., and referred to as the Illinois Division, of which the plaintiff is a member, and Division 42 located at St. Louis, Mo., and referred to as the Missouri Division, of which the individual defendants are members. The controversy involved the rights of the members of the respective locals to man the runs between Dupo, Ill., and Poplar Bluff, Mo., via Gale, Ill., and Dexter Junction, Mo. The distance from Dupo to Gale is 114 miles, from Gale to Dexter Junction 50.91 miles, and from Dexter Junction to Poplar Bluff 26 miles. Of this territory the 114 miles between Dupo and Gale, in the territory of the Illinois Division, and the 26 miles between Dexter Junction and Poplar Bluff, in the Missouri Division, is the property of the Missouri Pacific Railroad, while the 50.91 miles of trackage between Dexter Junction and Gale belongs 46.91 miles to the Cotton Belt Railway and 4 miles to the Missouri-Illinois Bridge Company, over which the Missouri Pacific Railroad had trackage rights only. The question as to how the runs between Dupo and Poplar Bluff should be prorated between the two locals and whether the foreign trackage should be considered in the apportionment had been a live controversy for a number of years. On January 10, 1927, it was considered by the general committee of adjustment on an appeal by the Illinois Division from conflicting rulings on the subject by the general chairman, and was disposed of as follows:

"Moved and seconded—Decision of General Chairman that foreign territory can not be prorated be sustained. Motion carried.

"Moved and seconded—Decision of General Chairman giving prorate of foreign territory from Dexter Junction to Gale to Missouri Division be reversed. Motion carried.

"Moved and seconded—The rights of the Mo. Div. engineers to continue the use of Cotton Belt rails between Dexter Junction and Gale for runs originating on Mo. Div. and terminating at Gale is conceded. Motion carried.

"Moved and seconded—That the prorate on runs between Dupo and Poplar Bluff via Dexter Junction be not retroactive. Motion carried."

The foregoing ruling was not appealed from by any of the interested parties and became effective. At the time of this ruling, Gale, Ill., was a division point on the Missouri Pacific Railroad, and by the decision of the general committee of adjustment the runs originating on the Missouri Division and terminating at Gale were conceded to the members of the Missouri Division. Subsequently, Gale was abolished as a terminal, whereupon the controversy was reopened by a letter from the officials of the Missouri Division, under date of December 14, 1927, to the general chairman of the general committee of adjustment, complaining that the abolishment of Gale as a terminal had destroyed the runs originating on the Missouri Division and terminating at Gale, which had been conceded to the Missouri Division in the former ruling, and again sought to have the foreign trackage between Dexter Junction and Gale prorated to the Missouri Division. It was further stated in the letter that the Missouri Division, after the abolishment of Gale as a division point, had sought an agreement with the Illinois Division, but that the Illinois Division would not agree to any departure from the ruling of the general committee of adjustment on January 20, 1927, and that, having failed to reach an agreement with the Illinois Division, the Missouri Division was, by its letter, referring its complaint to the general committee of adjustment under the provisions of sections 34 and 35 of the standing rules.

Following the receipt of this letter by the general committee of adjustment, a special

committee was appointed to consider the question presented therein. By its letter of January 17, 1929, the special committee reported that it had reviewed the file in the controversy, heard witnesses, and found that Gale had been abolished as a terminal on October 5, 1927, which had eliminated the runs held by the Missouri Division engineers between Poplar Bluff and Gale. Due to these circumstances, the special committee recommended:

"That Missouri Division engineers be given all mileage between Poplar Bluff and Gale on runs originating at Poplar Bluff and terminating at Dupo, originating at Dupo and terminating at Poplar Bluff.

"And that Illinois Division be given all mileage between Bush and Dexter Junction on runs originating at Bush and terminating at Poplar Bluff and originating at Poplar Bluff and terminating at Bush.

"Should Gale be re-established as a terminal for runs between Poplar Bluff and Gale, the runs will be manned by Missouri Division engineers."

The recommendation of the special committee was adopted by and became the ruling of the general committee of adjustment.

From this ruling of the general committee of adjustment, the Illinois Division appealed to the Grand Chief Engineer on points of law under the provisions of section 29 of the standing rules, which section is hereinafter quoted with the other pertinent provisions of the constitution and by-laws. As a basis for its appeal, it set out that the effect of the ruling of the general committee of adjustment appealed from was to prorate the foreign territory between Gale and Dexter Junction to the Missouri Division, which was in direct conflict with the former ruling of the general committee of adjustment "that foreign territory cannot be prorated" which former ruling had not been appealed from and was established law. Upon consideration of the appeal, the Grand Chief Engineer denied the appeal, ruling that the fact that Gale had been abolished as a terminal created a new condition which did not exist at the time of the former ruling and therefore no points of law were involved in the ruling appealed from. In his letter of April 8, 1929, to the Illinois Division denying their appeal on points of law, and giving reasons therefor, the Grand Chief Engineer stated, "If you are dissatisfied with the decision of the General Committee of Adjustment, it is your prerogative to appeal as per Section 28 of the standing rules, providing such appeal is made within ninety days from the date the decision was rendered." The Illinois Division perfected no appeal under section 28, but contented itself with appealing from the decision of the Grand Chief Engineer on points of law to the Grand International Division, which body on June 12, 1930, convened in the Sixth Triennial Convention, sustained the decision of the Grand Chief Engineer, whereby the ruling of the general committee of adjustment complained of became final.

It is the contention of the plaintiff that the ruling of the general committee of adjustment complained of is in direct conflict with its former ruling which had become the established law of the order and had not been repealed as provided by the laws of the order, and therefore constituted a violation of the constitution and by-laws of the order to the detriment of the plaintiff; that the plaintiff and others similarly situated with him are entitled to relief in equity from the burden of the said void and wrongful order.

It is not alleged in the bill nor are facts alleged which indicate that the action of the general committee of adjustment in making the ruling complained of was in any way affected or caused by fraud, duress, collusion, or other wrongful influence or that the rights of the plaintiff, under the constitution, were arbitrarily denied. On the other hand, the facts alleged and the contents of the exhibits attached to the bill indicate that the decision of the general committee of adjustment was made after due consideration of all rights involved, and, if wrong or improper, are so through error in judgment and not through intention. Wherefore it appears that the plaintiff must rest his right to relief entirely upon the proposition that the ruling of the general committee of adjustment violated the constitution and by-laws of the order and thereby operate unlawfully to deprive him and others similarly situated of their lawful seniority and territorial rights and the profits and advantages flowing therefrom.

The pertinent provisions of the constitution and by-laws establishing authority to fix the territorial and seniority rights of members and their rights of appeal are found in sections 27, 28, 29, 34, and 35 of the standing rules, as follows:

"Section 27. Any action taken by a General Chairman or a General Committee of Adjustment on any system shall stand as law for all members and Divisions on said system until repealed by the General Committee, or in accordance with provision for appeals in Section 28, Standing Rules. * * *

"Sec. 28. An appeal may be taken from the decision of the General Committee of Adjustment or the Chairman to the members of the system, if made within ninety days from the date of such decision, and a majority vote of members on said system shall be final. * * *

"Sec. 29. All appeals from the General Committee of Adjustment on all settlements shall first be appealed to the Grand Chief on points of law involved for his decision before they can be entertained by the Grand Body."

"Sec. 34. (a) No new business will be entertained by a General Committee of Adjustment unless sent under the seal of Divisions interested.

"(b) The General Committees of Adjustment shall have full power to settle all questions of seniority and rights to runs and jurisdiction of territory that are presented to them, and their decision shall be final unless, on an appeal to the membership, their decision is repealed by a majority vote. (This law is effective July 12th, 1927.)

"Sec. 35. When a question of jurisdiction of territory or seniority arises between the members themselves or two or more Divisions that cannot be amicably adjusted by such Divisions, said question shall, with all the facts in the premises, be referred to the General Committee of Adjustment who shall rule on the matter and such ruling shall stand as a law, subject to appeal as per Section 28 of the Standing Rules. * * * "

■ It is well established as a general principle that courts will not interfere with or review the decisions of the authorized tribunals of a voluntary association in the absence of a showing of fraud, collusion, or arbitrariness. Gonzalez v. Roman Catholic Archbishop of Manila, 280 U. S. 1, 50 S. Ct. 5, 74 L. Ed. 131; Engel v. Walsh, 258 Ill. 98, 101 N. E. 222, 45 L. R. A. (N. S.) 353; Simpson v. Grand International Brotherhood of L. E., 83 W. Va. 355, 98 S. E. 580; Jetton-Dekle Lumber Co. v. Mather, 53 Fla. 969, 43 So. 590; International Hod Carriers' Building & Common Laborers' Union of America, Local No. 426, v. International Hod Carriers' Building & Common Laborers' Union of America, Local No. 502, of International Hod Carriers' Building & Common Laborers' Union of America et al., 101 N. J. Eq. 474, 138 A. 532; Mayer v. Journeymen Stone-Cutters' Association, 47 N. J. Eq. 519, 20 A. 492.

In section 91 of Oakes on Organized Labor and Industrial Conflicts, the principle is stated somewhat more broadly as follows: "Section 91: Ordinarily the courts will not interfere with the internal affairs of the union so as to settle disputes between the members, or questions of policy, or internal management. They will intervene only when civil or property rights are involved and then only when there has been bad faith or fraud, or a question of public policy is involved, or the constitution or by-laws of the union have been violated by the acts of which complaint is made. They will not overrule the decision of a union tribunal merely because of a difference of opinion as to the merits."

■ Since no question of public policy or of bad faith appears from the plaintiff's bill, his case rests solely on the allegation that the ruling in question constituted a violation of the constitution and by-laws of the organization. An analysis of this question shows that the violation complained of, if any, is a violation of the rules of practice and procedure within the order as laid down by the constitution and by-laws rather than a violation of provisions affecting the substantial rights of the plaintiff. That the general committee of adjustment had the right under the constitution and by-laws of the organization either to allow or not to allow foreign territory to be prorated in fixing territorial and seniority rights between divisions cannot be questioned. Whether it was proper for it to make the ruling complained of allowing foreign territory to be prorated in view of its earlier ruling to the contrary, without repealing such earlier ruling, presents a question of procedure and practice rather than of substance. The right of the general committee of adjustment to repeal its former ruling, if necessary, is recognized in section 27 of the standing rules. The method of repeal is provided in section 29 of the rules of order. In view of this specific provision, does the enactment of a ruling which is in direct conflict with a former ruling operate to repeal such former ruling? Was it necessary, under the facts before the general committee of adjustment, that the former ruling be repealed before the new ruling could lawfully be made? Or, in view of the new situation which the committee found to exist because of the abolishment of Gale as a terminal, was it proper that the controversy be treated as a new one not controlled by the committee's former ruling? The organization, by its constitution and by-laws, had constituted officers and tribunals to pass upon these questions of order and procedure, and they were duly passed upon by such duly constituted officers and

tribunals. These were strictly questions of interpretation and construction of the constitution and by-laws of the union. That the courts will not review the correctness of the interpretation fairly placed upon the constitution and by-laws of a voluntary association by its duly authorized tribunals, particularly where only a procedural or jurisdictional question is involved, seems to be the settled rule. Burke v. Monumental Division, B. of L. E. (D. C.) 273 F. 707; Pratt v. Amalgamated Ass'n of Street & Elec. Ry. Employees of America, 50 Utah, 472, 167 P. 830; Long et al. v. B. & O. Railroad Co., 155 Md. 265, 141 A. 504; Simpson v. B. of L. E., supra. No reason here appears for departing from the usual rule, wherefore it would seem improper for the court to take jurisdiction of this case under the facts shown by the bill.

Another contention urged under the defendants' motions to dismiss which goes to the sufficiency of the bill is that the allegations of the bill and the contents of the exhibits made a part thereof show that the plaintiff did not exhaust all his remedies within the order before filing his suit for relief in equity. Courts will not take jurisdiction over controversies between a voluntary association and one of its members until the member has exhausted all remedies provided within the association. Engel v. Walsh, supra; Moody v. Farrington, 227 Ill. App. 40; Crisler v. Crum, 115 Neb. 375, 213 N. W. 366; Loeffler v. Modern Woodmen of America, 100 Wis. 79, 75 N. W. 1012; Oakes on Organized Labor and Industrial Conflicts, § 63; 24 Cyc. 828.

From an examination of the above-quoted sections of the constitution and by-laws which are made a part of the plaintiff's bill it is apparent that two methods of appeal from decisions of the general committee of adjustment were provided and both were open to the plaintiff. Each afforded a remedy. Failure to use either amounted to a failure to exhaust his remedies within the order. One cannot read those provisions of the constitution and by-laws without being impressed with the thought that it was the purpose of the organization that the control of the seniority and territorial rights of the members should first be exercised by the general committee of adjustment, but that the membership should be the ultimate and final arbiters of the seniority and territorial rights of the members of the union. The plaintiff's bill shows that the plaintiff did not appeal to the membership. By failing to give the members an opportunity to act in his controversy, the plaintiff precluded himself from an available remedy, whereby, it would appear, the equities of his contention would have been most certain to have been understood and given due consideration. Regardless of whether the tribunals of the organization were in error in their procedure in the case, the plaintiff had an opportunity to have any error obviated by appealing to the membership on the merits of the controversy, and of this opportunity he did not avail himself. Having failed to do this, he cannot now ask the courts to take jurisdiction of his case to determine the correctness of the procedural method followed by the tribunals of the organization in arriving at the decision, when it appears that the substance of the decision was within their constitutional power.

The plaintiff also relies upon an alleged violation of an agreement between the members of the brotherhood and the Missouri Pacific Railroad with reference to seniority rights and particularly of that paragraph of the agreement which reads as follows:

"h. When runs or work extend into or over one or more territories, the engineers affected will be assigned to run out the mileage or work on a pro rata basis under methods approved by the Superintendent and Local Chairman or General Chairman."

Plaintiff alleges that the method of assigning the mileage or work between Poplar Bluff and Dupo, in compliance with the ruling of the general committee of adjustment complained of, has never been approved by the superintendent of the railroad company, but has been permitted to go into effect without such approval, and that this constitutes an actionable violation of the agreement by the railroad company. It is sufficient to dispose of this contention to say that the acquiescence of the railroad company and its superintendent in the application of the ruling to the assignment of its engineers "to run out the mileage or work" in question is equivalent to an approval of the method by the superintendent, and therefore does not constitute a violation of the agreement by the railroad company.

In view of the conclusions above stated, I find it unnecessary to pass upon the further contention of the defendants that seniority rights of a member of a labor union do not constitute property rights of such a nature as to justify the interference of a court of equity in the internal administration of the affairs of the union through its authorized officers and tribunals.

For reasons heretofore pointed out, I find that the plaintiff's bill does not state facts constituting grounds for equitable relief, and therefore it must be and it is hereby dismissed at the cost of the plaintiff.