O’Neill, J.
The relators allege:
That the Ohio High School Athletic Association, hereinafter called association, is an unincorporated voluntary association, not for profit, and that its membership consists of approximately 1,500 junior and senior high schools, public, parochial and private and accredited by the Department of Education of the State of Ohio, and that the object and purpose of the association is to promote and maintain pure wholesome amateur athletics among its members;
That the association has adopted a “constitution and rules” designating and defining the duties of its officers and the conduct of athletics among the members of the association to maintain pure and wholesome amateur athletics;
That relators do not receive or disburse any tax money, nor do they take any part in the internal management or operation of educational and school functions of the members, nor do the relators, in their official capacity or as individuals, have any civil or property rights whatsoever in the membership schools of the association;
That any school becoming a member of the association *241 agrees to conform to and abide by tbe constitution and rules of tbe association;
That tbe association does not have any contractual or other connection with any school board or any of its membership schools and does not in any way control or have any voice in the proceedings of any school board, nor does any school board have any voice or control over the affairs of the association ;
That Canton McKinley High School and Portsmouth High School are members of the association and, upon becoming members of the association, agreed to abide by and conform to the constitution and rules, bylaws, interpretations and decisions of the association;
That membership in the association must be renewed annually;
That the most recent Canton McKinley High School membership agreement was entered into in September 1961;
That the membership agreement was signed by Paul A. Schott, administrative head of the high school, and reads as follows:
“I hereby agree that the Canton McKinley High School will conduct its athletics for the year 1961-62 in accordance with the constitution, rules, bylaws, interpretations and decisions of the Ohio High School Athletic Association. ”
That the Board of Education of the Canton Public Schools, Canton, Ohio, authorized such membership;
That Section 2 of Buie 8 of the rules of the association provides as follows:
“The use of undue influence by any person connected or not connected with the school to secure or to retain a student or the parents of a student shall cause the student to be ineligible and shall jeopardize the standing of the school in the association.”
That there is a booster organization in Stark County, Ohio, interested in high school athletics;
• That on or about the 29th day of August 1961, H. W. Mc-Kelvey, Superintendent of Schools of Portsmouth, Ohio, addressed a letter to W. J. McConnell, commissioner of the association, wherein Superintendent McKelvey complained that “Canton McKinley stole one of our football players”;
*242 That McConnell, acting in his official capacity in the association, caused a thorough investigation of the charge to be made, including the securing of affidavits and statements of every person connected with the charge, so far as possible;
That after careful and complete consideration of all the evidence, the board of control of the association found and determined that the family of two boys, members of the Portsmouth High School football squad, James Austin, a. k. a. James Lee Brown, and his brother Larry Austin, a. k. a. Larry Brown, had moved with the boys from Portsmouth to Canton immediately before the football season of 1961, and that the moving of the family and boys was in violation of the undue influence rule, Section 2 of Eule 8;
That Canton McKinley High School was suspended by the board of the association from playing interscholatsic football during the school year of 1962-1963 and the two boys were declared ineligible for interscholastic athletics at Canton McKinley High School;
That an appeal was permitted and a full rehearing was had on November 8, 1961;
That present at this rehearing, among others, were H. W. McKelvey, Superintendent of Portsmouth Public Schools, Otto F. Appel, Jr., of the Portsmouth, Ohio, Board of Education, Sanford Lazarus, President of the Board of Education of the Canton City Schools, Gordon Humbert, Superintendent of Canton Public Schools, Paul A. Schott, Principal and Administrative Head of Canton McKinley High School, and Harold DeHoff, City Solicitor of Canton, Ohio, representing Canton McKinley High School;
That the entire matter was fully reviewed and every opportunity given for the expression of opinion or to add additional information;
That the former action of the board of control was then affirmed;
That on November 22, 1961, Norman J. Putman, Prosecuting Attorney of Stark County, brought an action for injunction in the Court of Common Pleas of Stark County (case No. 104091), entitled State, ex rel. Putman, Pros. Atty., v. Board of Education of Steubenville City School District, a po *243 litical subdivision of the state of Ohio, 44 other boards of education in Ohio, and nine individuals;
That neither Canton McKinley High School nor the association was made a party to that action;
That on that same day, November 22, 1961, the Common Pleas Court of Stark County, without notice, issued' a temporary order restraining and enjoining the Board of Education of the Steubenville City School District, 44 other boards of. education in Ohio and their agents and employees, all members of the association, nine individuals who are members of the board of control and officers of the association, and all persons with knowledge of that order:
1. From enforcing or attempting to enforce or doing or permitting to be done any acts tending to enforce the order suspending Canton McKinley High School from engaging in interseholastic football during the 1962-1963 school year;
2. From any activity suspending or preventing or interfering with Canton McKinley High School’s engaging in interscholastic football during the school year 1962-1963;
3. From impairing or interfering with the presently existing contractual obligations respecting interseholastic football with Canton McKinley High School during the school year 1962-1963.
The relators allege further that the plaintiff in the Stark County action, the Prosecuting Attorney of Stark County, is not a member of the association and can not assert any interest or right in its management or insist upon participating in any of the interseholastic athletic activities or tournaments which the association may from time to time hold. Relators allege further that the action in Stark County does not involve any civil or property rights of the Prosecuting Attorney of Stark County and that, therefore, the Common Pleas Court of Stark County has no jurisdiction of the subject matter of the cause of action and is without jurisdiction to issue such restraining order and to grant the relief prayed for in the petition;
• That such action seeks and the restraining order was obtained to force the association to violate its compact with the other member schools by allowing and permitting Canton-McKinley High School to participate in interseholastic contests in violation of the constitution and rules as determined *244 by the association’s official governing body, the board of control, and in effect would cause the association to cease to function as a voluntary association.
The relators allege further that, unless a writ of prohibition is issued against the Court of Common Pleas of Stark County, the relators will be unable to function in their official duty under the rules of their association without subjecting themselves to prosecution for contempt of such illegal restraining order and injunction issued in the Stark County action, and irreparable harm and injury will be done to the cause of pure and wholesome amateur athletics.
Relators assert that an emergency exists and pray for the issuance of the writ of prohibition.
The respondents filed a demurrer to the petition in this • cause upon three grounds:
1. The relators have not legal capacity to sue;
2. The petition does not state facts which show a cause of action;
3. There is a defect of parties defendant.
It should be noted here that the nine individuals who are defendants in the injunction action in Stark County in which a restraining order was issued by the court are the officers and members of the board of control of the association.
The first and most important and basic issue raised by' respondents’ demurrer to relators’ petition is whether a public-school board of education is vested with the discretion to authorize one of the schools within its district and under its control to become a member of the association, an unincorporated voluntary association not for profit, the object and purpose of which is to promote and maintain pure wholesome amateur athletics among its members.
The majority of this court is of the opinion that a public-school board of education is vested with such discretionary authority.
Section 3 of Article VI of the Ohio Constitution provides:
“Provision shall be made by law for the organization, administration and control of the public school system of the state * *
Section 3313.47, Revised Code, provides:
“Each city * * * board of education shall have the manage *245 ment and control of all of the public schools of whatever name or character in its respective district. * * *”
Section 3313.20, Revised Code, provides:
“The board of education shall make such rules and regulations as are necessary for its government and the government of its employees and the pupils of the schools. * * *”
The controlling law on this question is set forth in Board of Education of Sycamore v. State, ex rel. Wickham, 80 Ohio St., 133, 88 N. E., 412; Brannon v. Board of Education of Tiro Consolidated School District of Crawford County, 99 Ohio St., 369, 124 N. E., 235; and Greco v. Roper et al., Board of Education of City School Dist. of Campbell, 145 Ohio St., 243, 61 N. E. (2d), 307.
In the case of Board of Education of Sycamore v. State, ex rel. Wickham, supra, the second paragraph of the syllabus states the law as follows:
“2. The statutes of the state relating to education which give the control and management of the public schools to the boards of education of the several districts, authorize such boards to establish rules and regulations for the government of the schools, and, so far as rules so established are reasonable, and fairly calculated to insure good government and promote the ends of education, will be sustained by the courts.”
This position is supported in the case of Greco v. Roper et al., Board of Education of City School Dist. of Campbell, supra, where it is stated in the first paragraph of the syllabus:
“1. Under the statutes of Ohio, a board of education is charged with the management and control of the public schools in its district and is vested with authority to make such rules and regulations as it deems necessary for its government and the government of its employees.”
This proposition of law was well stated, as follows, by Judge Zimmerman in his opinion in the Greco case, at pages 249 and 250:
“It will thus be seen that the General Assembly has granted boards of education wide latitude and discretion in the particulars mentioned * * #.
“The proposition is well settled that when an instrumentality of government is vested with discretion and such discre *246 tion is exercised in good faith and in a lawful manner, it should not be interfered with or controlled by the courts. Or, as stated by this court in the second paragraph of the syllabus of Brannon v. Bd. of Edn. of Tiro Consol. School Dist., 99 Ohio St., 369, 124 N. E., 235, ‘a court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any question it is authorized by law to determine.’ ”
The association has existed in Ohio for 54 years. During all this period, boards of education have authorized the administrative heads of the schools in their districts to take appropriate action to make their schools members of such association, and the administrative heads, in accordance with this direction, have taken such action, and the schools have thus become members of the association.
The association has established an enviable record for promoting and maintaining pure wholesome amateur athletics in this state. Canton McKinley High School’s most recent membership agreement was entered into in September 1961. The application of Canton McKinley High School for membership was signed by its administrative head, and its membership was approved by the Board of Education of the City of Canton.
The court having determined that boards of education in Ohio have the power to authorize schools in their respective districts to become members of the association, it follows from the allegations in the petition, admitted by the demurrer, that the association is an unincorporated voluntary nonprofit private association. As such, according to the provisions of Section 1745.01, Eevised Code, the association has the capacity to sue. The provisions of that section are as follows:
“Any unincorporated association may contract or sue in behalf of those who are members and, in its own behalf, be sued as an entity under the name by which it is commonly known and called.”
The second ground of the demurrer asserted by respondents is that the petition does not state facts which show a cause of action.
This attacks the following allegation in the relators’ petition:
“12. The Court of Common Pleas of Stark County was and *247 is without jurisdiction of the subject matter of said action [being case No. 104091] in Stark County and was and is without jurisdiction to issue said restraining order and to grant the relief prayed in said petition * * *.”
The law in this regard is stated, as follows, in 4 American Jurisprudence, 466, Section 17:
“It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. Accordingly, it is held that mandamus will not lie to regulate the affairs of unincorporated societies or associations, at least not in the absence of a permissive statute. Nor will an injunction be granted where the association is proceeding in accordance with its rules and within the scope of its jurisdiction. The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions.”
Even more to the point is the following language at page 472, Section 27, ibid:
“The decisions of any kind of voluntary society or association in disciplining, suspending, or expelling members are of a quasi judicial character. In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land. # * *”
In 5 Ohio Jurisprudence (2d), 440, Section 7, we find the same rule of law set forth:
“It is a well-established and uniform rule that courts of equity have no authority to interfere with the action of voluntary and unincorporated associations where no property right is involved. * * * And neither will such a court interfere with the management of a society unless the officers are acting in excess of their powers, or collusion or fraud is claimed to exist on the part of the officers or a majority of the members. * # *”
This rule of law has been recognized and followed in Paddock Hodge Co. v. Grain Dealers’ National Assn., 18 Ohio App., *248 66; Boblitt v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 73 Ohio App., 339, 56 N. E. (2d), 348; International Union of Steam and Operating Engineers v. Owens, 119 Ohio St., 94, 162 N. E., 386.
In jurisdictions outside Ohio, several cases involving the same factual pattern and this same question of law as in the instant case have followed this rule. State, ex rel. Indiana High School Athletic Assn., v. Lawrence County Circuit Court of Lawrence County, Indiana (Ind. 1959), 162 N. E. (2d), 250, is a case on all fours. Other cases which follow this rule of law are State, ex rel. Givens, v. Marion Superior Court (1954), 233 Ind., 235, 117 N. E. (2d), 553; Morrison v. Roberts (1938), 183 Okla., 359, 82 P. (2d), 1023; Suit v. Gilbert (1941), 148 Fla., 31, 3 So. (2d), 729; State of North Dakota v. North Central Assn. of Colleges and Secondary Schools (1938), 23 F. Supp., 694.
The respondents do not allege any mistake, fraud or collusion. The complaint of the respondents is that the penalty imposed by the association is too harsh. There is no allegation that it is arbitrary or any contention that it is not one provided for by the constitution and rules of the association. In fact, the uncontroverted allegations, that a hearing was held, that, following the imposition of penalty, a rehearing was granted, that everybody who wanted to be heard was heard, and that the penalty was affirmed, indicate that in no way was the action arbitrary.
To support the claim that the penalty is too harsh, respondents argue that students of Canton McKinley High School will be denied the opportunity to see their high school football team play in the fall of 1962, and that Canton McKinley High School’s band will be denied the opportunity to march and perform before the spectators at Canton McKinley High School games in the fall of 1962. These assertions do not constitute grounds for the issuance of a court injunction.
The penalty imposed by the association is indeed harsh and most severe. However, in the absence of mistake, fraud, collusion or arbitrariness, the decision of the association will be accepted by the court.
This court rejects the contention made by the respondents and suggested by the Attorney General that government regulation of interscholastic athletics in the public schools is desir *249 able and a virtual necessity. It is admitted by all parties to this action that the association has performed an excellent task in the supervision and control of interscholastic athletics for more than half a century in this state. There is nothing, of which this court can take judicial notice, to indicate that either politicians or bureaucrats in control of interscholastic athletics could perform the task as well as the school officials of the association have done.
Respondents contend further that relators have an adequate remedy at law by way of appeal. This court recognizes that a writ of prohibition is an extraordinary remedy. However, if the restraining order of the Court of Common Pleas of Stark County is allowed to stand, the whole system of supervision and control of interscholastic athletics in Ohio will be in jeopardy. This situation would continue for an indefinite period of time, during which there would be no effective supervision or control, and, as a result of this, such a damaging blow to clean athletics at the secondary school level could occur that interscholastie competition, as we have known it, would be destroyed. Forty-five high schools are directly involved in the restraining order issued by the Stark County Common Pleas Court. Actually 1,500 high schools, which are members of the association, are involved, and the interscholastic athletic program of each is in serious danger.
Since the parties have agreed that the ruling on the demurrer will be dispositive of the instant case, the issuance of the writ prayed for will eliminate all this delay and uncertainty. Even where there is an adequate remedy by way of appeal, this court may, in its discretion, issue a writ of prohibition. See State, ex rel. Tempero, v. Colopy et al., Judges, 173 Ohio St., 122, 123.
Canton McKinley High School was authorized by the Board of Education of the Canton Public Schools to become a member of the association, and, through the official act of Paul A. Schott, the administrative head of Canton McKinley High School, it became a member. Membership in the association carries with it the agreement that Canton McKinley High School will conduct its athletics in accordance with the constitution, rules, bylaws, interpretations and decisions of the association.
The duly authorized and proper officers of the association, *250 after a hearing, found Canton McKinley High school guilty of violating Section 2 of Rule 8 of the association’s official rules and imposed a penalty. The penalty is harsh, but there is no charge that it resulted, from mistake, fraud, collusion or arbitrariness.
It does order Canton McKinley High School not to carry out its contract to play football with certain other high schools in the fall of 1962. However, these contracts were made by Canton McKinley High School with full knowledge of and subject to the rules of the association, of which it was a member.
Under these circumstances, a court has no jurisdiction to enjoin the association or its members from enforcing this lawfully imposed penalty.
The writ of prohibition prayed for is, therefore, allowed.

Demurrer overruled and writ allowed.

Zimmerman, Taft, Matthias, Bell and Radcliff, JJ., concur.
Radcliff, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.