240 Ind. 114 (1959)
162 N.E.2d 250
STATE EX REL. INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION ET AL.
v.
LAWRENCE CIRCUIT COURT, NIXON, SPECIAL JUDGE.
No. 29,835.
Supreme Court of Indiana.
Filed November 18, 1959.
*115 Ruel W. Steele, Mellen & Mellen, both of Bedford, Harold J. Bell and Bell & Bell, of Indianapolis, for relators.
Patrick E. Chavis, Jr., George R. Brawley and Willard B. Ransom, all of Indianapolis, and Thomas H. Branaman, of Brownstown, for respondent.
*116 LANDIS, J.
This is an original action for writ of prohibition brought by relators L.V. Phillips and other members of the Indiana High School Athletic Association, et al., asking that respondent court be prohibited from taking any further action in a certain suit pending against relators in said court.
The facts in this case appearing from the petition and response are as follows: The action below for a restraining order and injunction was filed in the Jackson Circuit Court by Billy Joe Stevenson and Frank Stevenson, two students 14 and 16 years of age, in the Shields High School of Seymour, Indiana, by their parents and next friends Joe Stevenson and Pearl Stevenson. The action was brought to enjoin relators L.V. Phillips and other members of the Indiana High School Athletic Association, an unincorporated association, from enforcing any of its orders, rules, or restrictions, declaring plaintiffs to be ineligible for competitive athletics and in particular preventing them from playing on the basketball team representing Shields High School in contests with other member schools within said Athletic Association. An injunction was also sought to prevent Shields High School, a member of said Athletic Association from obeying any order or rule of said association which would have the effect of preventing said plaintiffs from participating as a representative of Shields High School in athletic events of said association.
The Jackson Circuit Court issued a restraining order without notice as prayed for, in substance temporarily enjoining relators from enforcing any order or ruling rendering plaintiffs ineligible from participating in interscholastic athletic competition as students of said Shields High School.
*117 Thereafter a change of venue was taken to the Lawrence Circuit Court where the cause is now pending.
It further is not disputed that the Indiana High School Athletic Association (hereinafter called the Athletic Association) is a voluntary unincorporated association composed of some 750 public, parochial and private schools within the state of Indiana for the purpose of setting up uniform rules and regulations pertaining to athletic competition between member schools. That such rules and regulations are to promote the ideals which the members espouse in relation to athletic competition, including those of strict amateur status of all persons whom the member schools choose to represent them. That the membership of Shields High School in said Athletic Association is contingent upon its compact with the other member schools to abide by the rules of the association and the actions of its officers and representatives pursuant thereto.
It appears that prior to the first day of August, 1958, the plaintiffs resided in the state of Illinois in a small community on the Ohio River near Cairo, Illinois, and on or about said date moved to Seymour, Indiana, at which time they enrolled in the Shields High School.
That said Athletic Association thereafter issued a ruling to Shields High School that it could not use plaintiffs in association sponsored activities as members of its competitive athletic teams, and specifically its basketball team under the eligibility rules of the association.
Relators here contend respondent court is without jurisdiction to restrain and enjoin them and the Athletic Association from carrying out the rules and regulations of said association as the association is a voluntary unincorporated association of public, parochial and private schools in their unofficial and non-governmental *118 capacity, and was acting lawfully and within its powers and authority, and that within such limited sphere of activity the courts do not interfere.
On the contrary respondent asserts that under the Constitution of Indiana[1] and the applicable statutes plaintiffs were entitled to attend public school including the Shields High School, and to utilize the study and training including physical training and athletics, and that relator Athletic Association has attempted to interfere therewith, which respondent court has jurisdiction to restrain and enjoin.
There can be no question in this case but that plaintiffs as residents of the city of Seymour, Indiana, as alleged in their complaint below, were entitled to attend Shields High School and pursue the course of study and training available therein as provided by law. With that right of plaintiffs relators in this case concede said Athletic Association could not interfere and it is their contention that no rule or restriction of said association does interfere with such right.
The crux of the controversy in this case is whether plaintiffs' right to go to public school, to-wit, Shields High School, and receive education and training includes such activities as "interscholastic" sports or games, viz.: inter-school basketball, as may be engaged in between picked teams of the 750 public, private and parochial schools embraced within the membership of relator Athletic Association.
As this question has not heretofore been presented *119 for decision in this state, we look to other jurisdictions for authorities bearing upon this question.
In the case of Morrison et al. v. Roberts (1938), 183 Okla. 359, 82 P.2d 1023, plaintiff, a high school student and member of the football team, violated a fixed rule of the Oklahoma High School Athletic Association in accepting an award of a gold football of the value of a few dollars. The Board of Control of said athletic association ruled plaintiff to be ineligible to play football for a period of one year for said violation, and plaintiff brought action in mandamus to set aside the action of the board. The Supreme Court of Oklahoma in ordering the dismissal of the suit stated at p. 361 of 183 Okla., pp. 1024, 1025 of 82 P.2d:
"If it be said that the rule involved and the fixed penalty is arbitrary, that may be so.... The same might be said also as to the arbitrary rule that `three strikes' retires the batter, not more nor less; ...
......
"The plaintiff has many rights as a citizen and as a high school student, but he has no vested right in `eligibility' as dealt with at such great length in the rules of the Oklahoma High School Athletic Association....
"... There is nothing unlawful or evil in any of those rules nor in the provision resting final authority in the board of control...."
The case of Sult v. Gilbert, et al. (1941), 148 Fla. 31, 3 So.2d 729, involved the validity of the suspension of Palmetto High School by the Florida High School Athletic Association, a voluntary association. Palmetto and Sarasota High Schools, who were members of said Florida High School Athletic Association, agreed to play a football game in 1939, but later Palmetto severed relations with Sarasota and there was a dispute as to whether the contract included the 1939 game. The *120 executive secretary of the Florida High School Athletic Association decided against Palmetto who without appealing the decision within the association as provided by the association's constitution, filed suit in circuit court, resulting again in a decision against Palmetto. A suspension for one year was ordered by the Florida High School Athletic Association for the violation by Palmetto of its constitution. Palmetto sued for an injunction against its suspension which was denied and then affirmed on appeal, the Supreme Court of Florida saying at p. 36 of 148 Fla., p. 731 of 3 So.2d:
"... The law is settled in this State that the courts will not take cognizance of a case arising from the expulsion of a member of a voluntary Association unless some civil or contractual right is involved....
......
"... It was purely an internal affair of the Association and there is no showing of mistake, fraud, collusion or arbitrariness in the proceedings.
......
"The law is well settled that the constitution and by-laws of a voluntary Association when subscribed or assented to by the members becomes a contract between each member and the Association and if they so provide a member may be expelled for insubordination to the Association...." (at p. 35 of opinion.)
In the case of State of North Dakota v. North Central Ass'n, etc. (1938), (7 Cir.), 23 F. Supp. 694, 99 F.2d 697, an injunction suit was brought against the North Central Association of Colleges and Secondary Schools, a voluntary association, to enjoin the suspension of two colleges from the accredited list.
The Federal District Court for the Eastern District of Illinois in an opinion by Judge Lindley, denied the injunction, stating at p. 699 of 23 F. Supp.:
"In churches, lodges and all other like voluntary associations each person, on becoming a member, *121 either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization, and courts will not interfere to control the enforcement of by-laws of such associations but will leave them free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their own government. Engel v. Walsh, 258 Ill. 98, 103, 101 N.E. 222, 45 L.R.A., N.S., 353; Bostedo v. Board of Trade, 227 Ill. 90, 81 N.E. 42; Harris v. Missouri P.R. Co., D.C., 1 F. Supp. 946; Elfer v. Marine Engineers Association, 179 La. 383, 154 So. 32...."
This Court in the case of State ex rel. Givens, etc., v. Marion S.Ct., Rm. 1 (1954), 233 Ind. 235, 117 N.E.2d 553, recognized the adherence of this jurisdiction to the general rule that courts will not ordinarily interfere to control the administration of the constitution or by-laws of voluntary associations, or to enforce rights springing therefrom.
The distinction between curricular and extra-curricular activities, which is an issue in the case before us, was pointed out in the case of Rockwell v. School Dist. No. 1 (1923), 109 Ore. 480, 220 Pac. 142, wherein a teacher employed for ten months on a written contract as a "high school and athletic instructor" was discharged one month later because of his inability to coach the football team. In his suit to collect his salary the court rejected the defense of the school district that he was unable to coach a high school football team, saying there was no authority to expend public money for the instruction or coaching of high school football teams, nor of making the qualifications of a teacher in the public schools depend on his ability as a coach of a football team. The court further stated that under the Oregon statutes school boards were authorized to employ teachers competent to give physical education instruction *122 and require such instruction, but that physical training was not coaching high school boys in the art of playing football. The opinion further remarked at p. 483 of 109 Ore., and p. 143 of 220 Pac.:
"... The physical training contemplated by the statute is a course of training for all of the pupils of a school and not for the training of a few. Physical training is required to be given in order to better the physical condition and welfare of all pupils, and, under the statute, such physical training shall conform to that prescribed by the State Superintendent of Public Instruction. This prescribed course does not include the playing of football, nor the coaching of pupils for competition in football playing with other teams. The defense pleaded, therefore, is insufficient to justify plaintiff's discharge."
The cases of Brine v. Cambridge (1929), 265 Mass. 452, 164 N.E. 619; and Wright & Ditson v. Boston (1930), 270 Mass. 338, 170 N.E. 72, involved the question of the right of school authorities to purchase basketball and football suits in order to be loaned to pupils during practice and in the playing of basketball and football games. The Supreme Judicial Court of Massachusetts held in each of such cases that although the school committees of defendant cities were authorized to conduct physical training and athletics and to provide proper equipment under the applicable Massachusetts statutes, this did not allow such apparel to be bought for the purpose of being loaned to certain pupils while members of a basketball or football team representing the school.
The difference between physical education or physical training included within the curriculum of public schools and inter-school or interscholastic athletics, which are generally considered extra-curricular, is discussed in an authoritative opinion by Senator John W. *123 Bricker when he was Attorney General of Ohio (Opinion of Atty. Gen. of Ohio (1933), Vol. 1, p. 552, at p. 558) from which we quote:
"... in the light of the holdings and reasoning of these courts, I am of the opinion that the term `physical education' which the statutes of Ohio direct shall be included in the curriculum of the public schools of Ohio does not include what is commonly called `interscholastic athletics,' that is, the playing of games in competition by picked teams representing the several schools. Interscholastic athletics is not a proper public school activity within the scope of `physical education' as the term is used in our statutes....
......
"Interscholastic athletics is oftentimes conducted by organizations separate and apart from the regular school authorities. These organizations are sometimes incorporated as corporations not for profit. More often, perhaps, they consist of mere voluntary associations composed of the principal of the school and some of the instructors, and occasionally, outsiders who are interested in athletics become members of such organizations.
"The actual promotion and conducting of so-called `interscholastic athletics' involves the expenditure of a considerable amount of money for the payment of coaches, purchase of uniforms and equipment, traveling expenses, payment of officials and other employes for the conducting and management of the actual competitive games that are played, the cost of correspondence, rental of grounds and purchase of trophies of various kinds. This expense is borne by the organizations, and the moneys necessary therefor are derived, to a great extent, from admission fees which are charged patrons of the games. Sometimes these funds are supplemented by voluntary contributions from persons who are interested in such activities. There is no statutory authority in Ohio for the expenditure of public funds for such purposes."
Attention is also directed to the recent opinion of the Honorable Cleon H. Foust when he was Attorney General *124 of Indiana to the effect that funds collected from class plays, school lunches, athletic contests or social activities were extra-curricular in nature and not impressed with a public interest or use, and were, therefore, not public funds required to be deposited in institutions approved by the State Board of Depositories. Opinion of Attorney General of Indiana (1948), p. 94.
We believe the foregoing authorities are decisive of the question before us and that the right of plaintiffs under the Indiana Constitution and statutes to go to the public schools and receive education and training cannot properly be said to include interscholastic sports and games, viz.: inter-school basketball as may be engaged in between picked teams of the various public, private and parochial schools constituting the membership of relator Athletic Association.
As the rule and order of the Indiana High School Athletic Association in question have not been shown to be invalid in any respect, said association is entitled to enforce the same as against its members including the Shields High School without interference by the courts, and it necessarily follows that respondent court is without jurisdiction to entertain the injunction suit brought by plaintiffs attempting to restrain said Athletic Association and the other defendants therein.
The temporary writ of prohibition is now made permanent.
Bobbitt and Jackson, JJ., concur; Achor, C.J., not participating because of illness; Arterburn, J., not participating.
NOTE.  Reported in 162 N.E.2d 250.
NOTES
[1] Art. 8, § 1, of the Constitution of Indiana provides: "§ 1. Common Schools.  Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all."