Paige ROBBINS, by her next friends
and parents Paul & Pam
ROBBINS, Plaintiff,

v.

INDIANA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC., Defendant.

No. NA 96–98–C H/R.

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 8, 1996.

Jay D. Allen, Allen Allen & Allen, Salem, IN, For Paige Robbins.

Robert M. Baker, III, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, For Indiana High School Athletic Ass'n.

## FINDINGS, CONCLUSIONS AND ORDER DENYING INJUNCTIVE RELIEF

HUSSMANN, United States Magistrate Judge.

This matter comes before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] on the Complaint for Injunctive Relief filed by Paige Robbins ("Robbins"), by her next friends and parents Paul and Pam Robbins. Robbins seeks to enjoin the defendant, Indiana High School Athletic Association, Inc. ("IHSAA"), from enforcing the IHSAA Transfer Rule, which prevents Robbins from participating as a member of the Providence High School ("Providence") varsity volleyball team during the Fall 1996 semester. In addition, Robbins seeks to enjoin enforcement of the IHSAA Transfer Rule.

At the parties' request, a hearing was held on the plaintiffs' Complaint for Injunctive Relief on July 31, 1996.[2] At the conclusion of the testimony, the Court took the matter under advisement and gave counsel for the parties the option to submit proposed findings and conclusions to the Court.

The parties having submitted their proposed findings and conclusions, and the Court, having reviewed the same and having considered the evidence, including the transcript of the IHSAA appeal hearing held on March 22, 1996, and the arguments and authorities submitted by counsel in support of their respective theories in the case, and being duly advised, now enters the following Findings, Conclusions and Order:

1. This matter is before the Magistrate Judge upon the Consents filed by the parties and the Order of Reference entered by The Honorable Gene E. Brooks, District Judge, on July 22, 1996.

2. The record before this Court does not specifically contain a motion for a preliminary injunction under Fed.R.Civ.P. 65(a) or Indiana Rules of Court. The parties, however, asked for an immediate hearing on the complaint, in light of the fact that volleyball tryouts begin August 9, 1996, and have treated and briefed the issues making reference to preliminary injunction standards. (See Defendant's Brief in Opposition, p. 8ff.)

## JURISDICTION

This suit was originally commenced in Washington County, Indiana, with the filing of a Complaint for Injunctive Relief. On July 15, 1996, the IHSAA removed the action pursuant to 28 U.S.C. §§ 1441 and 1446. This Court has original jurisdiction under 28 U.S.C. § 1331 in that there has been an allegation of a violation of the Fourteenth Amendment to the United States Constitution, and a claim asserted under 42 U.S.C. § 1983.

## FINDINGS

1. Robbins, a minor, is the daughter of Paul and Pam Robbins, and resides with her parents in Washington County, Indiana.

2. Robbins is a high school student who formerly attended Eastern Pekin High School ("Eastern") where she completed her freshman and sophomore years and the first semester of her junior year. She then transferred to Providence (a parochial school) in January 1996 for the second semester of her junior year. Robbins will be a senior at Providence this fall.

3. The IHSAA is a voluntary not-for-profit corporation, open to all public, private, parochial and institutional schools in the State of Indiana, with its principal office located in Marion County, Indiana. Both Eastern and Providence are members of the IHSAA. All public schools and 34 private schools are members of the IHSAA at this time. (Testimony of Gardner.)

4. The public and private Indiana high schools who have associated together, through the IHSAA, have adopted rules regarding eligibility and other matters related to interscholastic athletic competition among

The Court is aware that a distinction exists between a preliminary and a permanent injunction. See the discussion in Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2941. There appears to be some differences between elements necessary to obtain a preliminary injunction and the elements necessary to obtain a permanent injunction. Because the parties appear to be treating this as a request for a preliminary injunction, the Court will employ standards applicable to preliminary injunctions in its analysis, even though no specific motion is docketed.

themselves. The purpose of the IHSAA is to encourage, regulate and give direction to wholesome, amateur interscholastic athletic competition between member schools.

5. Membership in the IHSAA is voluntary and open to all Indiana high schools which happen to be accredited by the Indiana Department of Education. The IHSAA is governed by a Board of Directors and Executive Committee elected by a majority vote of its school membership.

6. By their membership in the IHSAA, member schools agree to administer their interscholastic athletic programs in accordance with the rules as adopted by the IHSAA.

7. The uniform rules of the IHSAA which govern eligibility of students who compete in interscholastic athletic competition, and other matters related to interscholastic athletic competition, are contained in the IHSAA Eligibility Rules and are established by a majority vote of the members of the IHSAA Board of Directors. The Eligibility Rules are contained in the IHSAA Manual which was made a part of the evidence.

8. Included in the Eligibility Rules is Rule 19, the Transfer Rule. Under the Transfer Rule, a student who transfers to an IHSAA member school, with a corresponding change of residence by the student's parents, may have immediate full eligibility at the new school, provided the transfer is not athletically motivated. Further under the Rule, a student who transfers, for nonathletic reasons, to an IHSAA member school without a corresponding change of residence by the student's parents will have limited eligibility for the first year after his or her transfer, unless the student falls within one of thirteen exceptions which permit full eligibility under those circumstances. If a transfer is athletically motivated, the student has no eligibility for the year following the transfer.

9. Transfers of students from school to school motivated by athletic purposes, or school jumping, have historically been considered a problem in Indiana high school sports and addressed by the membership through the implementation of a transfer rule. The reasons for adopting a transfer rule are set out in ten subparagraphs in the philosophy section which precedes the text of Rule 19. These reasons include the fact that transfer rules protect the opportunities of bona fide students to participate in athletics; they support the educational philosophy that athletics is a privilege which must not be permitted to assert a dominant position over academic endeavors; and they support the principle that high school students should live at home with parents or guardians and attend school in the district where the parents live.

10. The current Transfer Rule distinguishes between transfers involving a parental move and transfers which do not. The current Transfer Rule does not depend on detailed factual investigations because of the sheer number of transfers (3,000 last year) and because detailed factual investigations are neither effective nor economically feasible. (Testimony of Garner.)

11. The current Transfer Rule also incorporates a limited eligibility feature. The IHSAA has determined that the majority of athletically motivated transfers occur among student athletes who play at a varsity level, and therefore, permitting subvarsity level participation but prohibiting varsity level participation following a transfer discourages athletically motivated transfers, but at the same time, permits some athletic participation for the majority of students following a transfer. (Testimony of Garner.)

12. Robbins participated in volleyball at the varsity level for two seasons while attending Eastern.

13. Robbins' parents have not moved their residence; rather, Robbins transferred from Eastern, which is a public school serving her parents' school district, to Providence, which is a private parochial school.

14. Robbins does not fall under any of the thirteen exceptions found at Section 19–6.1 of the Transfer Rule.

15. Under the Transfer Rule, Robbins is only eligible to participate in interscholastic sports at a subvarsity level until January 1997.

16. On January 24, 1996, Robbins submitted a Transfer Report to the IHSAA and

requested that she be granted immediate full eligibility.

17. On January 29, 1996, IHSAA Assistant Commissioner Pat Roy ruled that Robbins would have limited eligibility (Rule 19–6.2) because she changed schools without a corresponding change of residence by her parents, and because she did not fall within any of the thirteen exceptions at Section 19–6.1 of the Transfer Rule.

18. Pursuant to the IHSAA Eligibility Rules, on February 12, 1996, Robbins, through Providence, appealed the decision to the IHSAA Executive Committee. On March 22, 1996, a full hearing was held before the IHSAA Executive Committee, at which Robbins' parents appeared and testified. Thereafter, the IHSAA Executive Committee entered its ruling upholding the decision of Assistant Commissioner Roy, and declaring that Robbins have immediate *limited* eligibility. Robbins would not receive full eligibility until a period of 365 days had expired, commencing on the date Robbins enrolled at Providence. This ruling is the subject matter of these proceedings.

19. A transcript of the testimony given at the IHSAA hearing before its Executive Committee on March 22, 1996, and the exhibits and written decision, were all made a part of the evidence.

20. At the hearing before this Court, Robbins established by convincing evidence that she has recently converted to Catholicism and that such conversion was a factor in her decision to transfer to Providence, a parochial school. She also presented evidence that she is going to be taking certain advanced courses at Providence not available at Eastern. These courses give her college credit and are advanced placement courses that will assist in her current pre-medical career path. The availability of these courses was another factor in her decision to transfer. Finally, she presented evidence that she was seeking "new challenges" or "other challenges," and that those "challenges" were a factor in her decision to transfer to Providence. Robbins stated that participation in athletics was not a consideration in her decision; the Athletic Director at Eastern supported Robbins' testimony; and the IHSAA Administrator admitted that there is no evidence in the possession of the IHSAA that her transfer is athletically motivated. There is no evidence that Robbins anticipates obtaining a scholarship to attend college as a result of her volleyball skills.

21. By attending Providence, Robbins will be able to take some religious courses, will be able to attend morning prayer, and on certain Catholic holidays, will be able to attend mass at school; however, Robbins admits that she was unaware, before transferring, about the availability of morning prayer and the masses. Robbins admits that playing on the junior-varsity, as opposed to varsity, volleyball team will not affect her religious practices, although she believes she will be deprived of the ability to associate with certain varsity players and friends. Robbins states that even though under the current IHSAA ruling she would be able to participate on the junior-varsity team, she has already elected to not participate in volleyball unless it is at the varsity level.

### CONCLUSIONS

The Court concludes, based upon the evidence, as follows:

1. To the extent that any finding of fact constitutes a conclusion of law, it shall be deemed a conclusion of law; to the extent any conclusion of law shall constitute a finding of fact, it shall be deemed a finding of fact.

2. The law is with the IHSAA and against Robbins.

3. In order for Robbins to succeed on her prayer for preliminary injunctive relief, she carries the burden of proving her remedies at law are inadequate, she will suffer irreparable harm if the injunction does not issue, the threatened harm to her outweighs the harm to the IHSAA if the preliminary injunction is granted, and the public interest will not be disserved by granting the injunction; Robbins must also demonstrate some likelihood of success on the merits. *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986); *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6

(7th Cir.1992). Since the granting of a preliminary injunction here would give Robbins substantially all the relief she could obtain at trial, Robbins' burden is a heavy one. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld–Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993); *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981), *en banc.*

■ 4. The federal Due Process and Equal Protection Clauses do not apply to acts of private entities. *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). The IHSAA is an organization whose very existence is entirely dependent upon the absolute cooperation and support of the public school system of the State of Indiana and *is* subject to constitutional scrutiny as a state actor and as being involved in state action. *Haas v. South Bend Community School Corp.*, 259 Ind. 515, 289 N.E.2d 495 (1972); *Indiana High School Athletic Ass'n, Inc. v. Schafer*, 598 N.E.2d 540 (Ind.App.1992); *see also Griffin High School v. Illinois High School Ass'n*, 822 F.2d 671, 674 (7th Cir.1987) (where the Illinois association has been held to be a state actor).

■ 5. With respect to Robbins' claims that she has been denied due process of law, it is unclear whether she is alleging procedural or substantive due process. *IHSAA v. Schafer, supra*, performs the appropriate analysis in these words:

Assuming the reference is to procedural due process, the constitutional doctrine on this point is as follows:

In its most basic form, a procedural due process analysis requires the Court to ask three questions: (1) whether the defendant's acts constitute state action; (2) whether plaintiff has a protectable interest, defined as a deprivation of 'life, liberty, or property;' and, if the answer to both of the above questions is 'yes,' the Court must address (3) what due process is required by the Constitution.

598 N.E.2d at 550. Having found state action, we now advance to the second step. The Supreme Court in *Haas v. South Bend Comm. School Corp.*, stated "a student has no constitutional right to participate in inter-

scholastic athletics." 289 N.E.2d at 498. However, *Haas* also teaches that a program of interscholastic sports, "*after having been provided,*" *id.* (original emphasis), must be administered without violation of the Fourteenth Amendment, at least. if the case involves an equal protection claim arising from gender-based discrimination. In other words, participation in interscholastic sports, even if not a constitutional right, is perhaps a non-constitutional "privilege" protected by the Fourteenth Amendment. *See Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d 287 (1970) (welfare benefits). Therefore, the second step of the test is met. Robbins, however, does not argue that the notice and hearing she received from the IHSAA are inadequate, and the Court does not find that those procedures are inadequate. This Court cannot conclude that plaintiff has been denied procedural due process.

■ 6. If Robbins is alleging she has been denied substantive due process, the *Schafer* court describes that concept as:

the constitutional doctrine of implemention by courts of the "promise of the Constitution that there is a realm of personal liberty which the government may not enter." *Planned Parenthood of S.E. Penn. v. Casey* (1992), 505 U.S. 833, 847, 112 S.Ct. 2791, 2804, 120 L.E.2d 674. Assuming that participation in interschool sports might be protected by such a promise, as a first step, "classic constitutional methodology requires us to determine the appropriate standard of review...." *IHSAA v. Raike*, 164 Ind.App. at 177, 329 N.E.2d at 71. The rules challenged here involve no regulation directed at a suspect class, such as race or national origin, or toward a fundamental right, such as freedom of association or interstate travel, nor are they based on gender or illegitimacy. *See Griffin High School, supra.* Therefore, review of these rules for conformity with substantive due process follows a rational basis test—the rule must "'bear a rational relation to a legitimate government interest.'" *Id.*, 822 F.2d at 676 (quoting *Vaden v. Village of Maywood* (7th Cir.1987), 809 F.2d 361, 364, cert. denied 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381). The ra-

tional basis test will also apply to equal protection analysis, to which we now turn; therefore, for the purposes of this case, substantive due process can be equated with equal protection—both doctrines are subsumed into the rational basis test.

*IHSAA v. Schafer,* 598 N.E.2d at 551 (footnote omitted). Therefore, in this case, like in *Schafer,* the issue of whether Robbins' rights to substantive due process of law have been violated follows the Equal Protection Clause analysis.

7. The first question presented by Robbins' equal protection claim is the applicable standard of review. The usual standard of review for a statute or regulation challenged on equal protection grounds is the rational basis test. Under this test, legislation is presumed to be valid, and will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981); *Vaden v. Village of Maywood, Ill.,* 809 F.2d 361, 365 (7th Cir.1987). However, the United States Constitution requires heightened judicial scrutiny in two situations: when a law classifies so as to burden a "suspect class," and when it classifies in such a way as to infringe upon a constitutionally protected fundamental right. *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898 n. 6, 106 S.Ct. 2317 n. 6, 90 L.Ed.2d 899 (1986); *see Cleburne,* 473 U.S. at 440–42, 105 S.Ct. at 3255.

8. According to Robbins, the IHSAA Transfer Rule burdens parents and students' First Amendment right to the free exercise of their religion. The transfer rules on their face do not classify in terms of religion. However, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for government neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

9. Robbins has presented no evidence that the rights of parents and students to practice their religion have been unduly burdened in this case. To be an undue burden, there must be "grave interference with important ... religious tenets," *Yoder,* 406 U.S. at 218, 92 S.Ct. at 1534, or there must be state action which affirmatively compels students or parents to "perform acts undeniably at odds with fundamental tenets of their religious beliefs," *id.* Because there is no evidence in the record that the new Transfer Rule unduly trammels upon the religious beliefs of Robbins or her parents, strict scrutiny of these by-laws is not required.

10. Thus, the correct standard for reviewing the IHSAA Transfer Rule is the rational basis test. Under this test, the Transfer Rule will not be overturned unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979). The stated purpose of the transfer rules is to prevent what has traditionally been referred to as school jumping for athletic purposes. The IHSAA's Transfer Rule is based on experience that when school transfers occur without a corresponding change in parental residence, athletic considerations may frequently be the true motivating factor in the change. While an argument can be made that this rule catches some non-athletically motivated transfers into the net constructed to stop only athletically motivated transfers, this Court cannot conclude that these regulations are "irrational."

11. Even under the rational basis test, however, a regulation may violate the Equal Protection Clause if it can be shown that the sole purpose of the regulation was the desire to injure a particular class of persons. *E.g., U.S. Dep't. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825–26, 37 L.Ed.2d 782 (1973) (A statute excluding household groups that included unrelated persons from the federal food stamp program violated the Equal Protection Clause, because it was motivated solely by a "bare congressional desire to harm a politically unpopular group."); *see also Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983),

*cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (Discriminating against a class of persons in a "vicious and irrational fashion" gives rise to an equal protection claim.); *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982) ("Purposeful or invidious discrimination" against a class violates the Equal Protection Clause.) Robbins has offered no evidence showing that the transfer rules were enacted for the sole purpose of interfering with religiously motivated transfers. This Court therefore must conclude that the IHSAA Transfer Rule does not violate the Equal Protection Clause.

■■■ 12. This Court notes that the Indiana Supreme Court, in construing a previous IHSAA Transfer Rule under the Equal Protection Clause of the federal Constitution, has held that such rule, while rationally related to its intended purposes, was nevertheless unconstitutional because it was "overbroad." *Sturrup v. Mahan*, 261 Ind. 463, 305 N.E.2d 877 (1974). More recently, the Indiana Court of Appeals has followed such state authority, but out of deference to its requirement to follow standing precedent from the high court. *Indiana High School Athletic Ass'n, Inc. v. Carlberg*, 661 N.E.2d 833 (Ind. App.1996), *pet. for trans. pending.* This Court is not bound by those Indiana cases, but rather, looks to the decisions of the U.S. Supreme Court and the law of this Circuit. *South Corp. v. U.S.*, 690 F.2d 1368, 1370, n. 2 (Fed.Cir.1982), *en banc*; *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, n. 16 (Fed.Cir.1982), *en banc.* Federal equal protection "rational basis" analysis does not contain an "overbroad" component. *Jordan v. Indiana High School Athletic Ass'n, Inc.*, 813 F.Supp. 1372 (N.D.Ind.1993), *diss'g as moot*, 16 F.3d 785 (7th Cir.1994). Rather, high school transfer rules, like the rule in question, are valid and enforceable. *Griffin v. Illinois High School Ass'n, supra.*

13. The IHSAA Executive Committee, in its decision, correctly applied the rules of the IHSAA in that Robbins was granted limited eligibility because she had changed schools without a corresponding change of residence by her parents, and because she did not fall within any of the exceptions to Section 19–6.1 of the Transfer Rule. Neither the rule nor the ruling violate the Equal Protection Clause of the Fourteenth Amendment. The decision of the IHSAA Executive Committee must be affirmed.

■■■ 14. Robbins fails to meet her burden that she will be irreparably harmed if not allowed to participate on the Providence varsity volleyball team. The IHSAA's ruling will not keep Robbins from fully practicing her religion; will not stop her from attending the school she wishes (she is already attending Providence); will not prohibit her from participating in athletics (she can now participate at the junior-varsity level, although she is electing not to participate), from practicing with any of the athletic teams at Providence (including the varsity team), or from participating in any athletic contest not affiliated with Providence or the IHSAA; nor has it prohibited Robbins from doing any other activity, directly or indirectly, related to her education.

15. Preliminary injunctive relief is also not warranted in this case because Robbins has not shown a reasonable likelihood of success on the merits.

16. Robbins' prayer for a preliminary injunction enjoining the IHSAA from enforcing its Transfer Rule against her must be denied. Robbins' request for a preliminary injunction against the IHSAA from enforcing the Restitution Rule must likewise be denied since Robbins will not be participating under a court order, and therefore, there will be no need for the IHSAA to order any restitution.

### CONCLUSION

There are times when a court must reach a decision that is not emotionally satisfying. This is one of those times. This Court would like to allow Robbins to play varsity volleyball, as it appears clear that she did not transfer to her new school for athletic reasons. It is tempting to say that although Robbins' participation in varsity athletics violates the letter of the IHSAA rule, the spirit of the rule is not violated in this particular case. The facts before this Court provide a tempting opportunity for the Court to invoke the well-known equitable maxum, "No harm [to the purpose of the rule], no foul."

Unfortunately the Court is required to put emotion aside and follow the law as its exists. In this case, Robbins has not been denied procedural due process. The IHSAA has provided notice and an opportunity to be heard—a hearing procedure which comports with the elements of procedural due process of law. Robbins therefore has no claim for denial of ·procedural due process under the Due Process Clause of the Fourteenth Amendment, or under the Indiana Constitution.

With respect to her claims alleging denial of substantive due process or equal protection of the laws under the Equal Protection Clause of the Fourteenth Amendment, courts are required to exercise restraint when considering policy decisions made by state actors. As Chief Justice Arterburn said in his dissent in *Sturrup*, there is always a temptation for a court to think that it knows better what is good for party litigants than the administrative body or legislature which fixes rules of conduct.[3] In this case, the rule at issue addresses what people who run our schools perceive as a problem—school jumping for athletic purposes. They addressed that problem in a manner that is imperfect—but is not irrational or unreasonable. The place to change that rule is through the IHSAA rule promulgation procedure, and not by court fiat.

Robbins has indicated she will not try out ·for the team if she is. not eligible for varsity games. The Court would suggest that she reconsider that decision. Benefits to the varsity team undoubtedly occur when they practice against better players. An enlightened coach may perceive significant leadership qualities from a player who dedicates herself to the team, and pays a price for the religious convictions she espouses. Robbins will receive the benefits of improving her skills and the camaraderie of being on the team. The result of Robbins' presence on the team may be positive for all involved.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Robbins' request for injunctive relief is hereby **DENIED.**

**SO ORDERED.**

---

**3.** Chief Justice Arterburn knew a temptation . when he saw one. This Court will not decline an opportunity to suggest that an additional exception to Rule 19–6.1 could be constructed by which students like Robbins would be allowed immediate eligibility. That exception might allow transfer to a parochial school with immediate eligibility when: (a) approval from the Athletic Director of the school from which the student is transferring is documented; and (b) an affidavit is provided by priest or clergy that the student is an active, practicing member of the religious denomination administering the school. It would appear to this Court that under such conditions the potential for school jumping solely for athletic purposes is minimal. The existence of some alternative suggestion for the resolution of claims such as this does not, however, establish that the method of dealing with the problem selected by the IHSAA is "irrational" or "unreasonable."